**LAW OFFICES OF ZEV B. ZYSMAN**
A Professional Corporation
Zev B. Zysman (176805)
zev@zysmanlawca.com
15760 Ventura Boulevard, Suite 1915
Encino, CA 91436
Telephone:   (818) 783-8836
Facsimile:   (818) 783-9985

*Attorneys for Plaintiff and*
*the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IGOR SHVAGER, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VIASAT, INC, VIASAT COMMUNICATIONS, INC., and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: CV-12-10180-MMM (PJW)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   October 21, 2013<br>Time:   10:00 a.m.<br>Ctrm:   780<br>Judge:  Honorable Margaret M. Morrow |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    OVERVIEW OF THE PROPOSED SETTLEMENT  . . . . . . . . . . . . . . . . 4

    A.     Settlement Class  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.     Settlement Consideration  . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.     Cash Benefit to Class Members  . . . . . . . . . . . . . . . . . . . . . . . 5

            a.     *Cy Pres* Distribution of Settlement Amount Remainder  5

    C.     Non-Monetary Relief  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.     Payment of Settlement Administration Expenses  . . . . . . . . . . . . . 6

    E.     Payment of Attorneys' Fees and Costs to Class
Counsel and Service Payment to Class Representative  . . . . . . . . . . 6

IV.    CERTIFICATION OF THE SETTLEMENT CLASS
IS WARRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.     Numerosity  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.     Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.     Typicality  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.     Fair and Adequate Representation  . . . . . . . . . . . . . . . . . . . . . 10

    E.     Common Questions of Law and Fact Predominate
Over Any Questions Affecting Only Individual Members,
And A Class Action Is Superior To Other Methods of
Adjudication  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

i

1          1.    Common Questions Predominate Over
                 Individual Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

2          2.    A Class Action is the Superior Method to Settle
3                This Controversy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4    V.   PRELIMINARY APPROVAL OF THE SETTLEMENT
          IS WARRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5         A.    Standard for Preliminary Approval of Settlement . . . . . . . . . . . . . 13
6
          B.    The Proposed Settlement Is Within the Range of
7                Possible Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8    VI.  THE PROPOSED CLASS NOTICE PROGRAM IS
          APPROPRIATE AND CLASS NOTICE SHOULD
9         BE APPROVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

10   VII. THE FINAL SETTLEMENT HEARING . . . . . . . . . . . . . . . . . . . . . . . . 22

11   VIII. PROPOSED SCHEDULE OF EVENTS . . . . . . . . . . . . . . . . . . . . . . . . 23

12   IX.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                                                      ii

# TABLE OF AUTHORITIES

CASES                                                                      Pages

*Alberto v. GMRI, Inc.*
   252 F.R.D. 652 (E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Blackie v. Barrack*
   524  F.2d 895 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Blech Sec. Litigation*
   187 F.R.D. 97 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Compact Discount Minimum Advertised Price Antitrust Litigation*
   216 F.R.D. 197 (D. Me. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Cotton v. Hinton*
   559 F.2d 1326 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Deposit Guaranty National Bank v. Roper*
   445 U.S. 326 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ellis v. Costco Wholesale Corp.*
   240 F.R.D. 627 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hanlon v. Chrysler*
   150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Korn v. Franchard Corp.*
   456 F.2d 1206 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Local Joint Exec. Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
   244 F.3d 1152 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re NVIDIA Corp. Deriv. Litigation*
   No. C-06-06110-SBA, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) . . . . 14

*In re Mercury Interactive Corp. Sec. Litigation*
   2010 WL. 3239460 (9th Cir. Aug. 18, 2010) . . . . . . . . . . . . . . . . . . . . 6, 21

iii

# TABLE OF AUTHORITIES CON'T.

CASES                                                                      Pages

*Molski v. Gleich*
    318 F.3d 937 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mullane v. Central Hanover Bank & Trust Co.*
    339 U.S.  306 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*National Rural Telecomms. Cooperative v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Nelson v. Bennett*
662 F. Supp. 1324 (E.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Officers for Justice v. Civil Serv. Commission*
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rosario v. Livaditis*
    963 F.2d 1013 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Simpson v. Fireman's Fund Insurance Co.*
    231 F.R.D. 391 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Thomasson v. GC Services, Ltd Partnership*
    2011 WL 1339063 (S.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Trief v. Dun & Bradstreet Corp.*
    144 F.R.D. 193 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Van Bronkhorst v. Safeco Corp.*
    529 F.2d 943 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Wireless Facilities, Inc. Sec. Litigation II*
    253 F.R.D. 607 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zinser v. Accufix Research Institute, Inc.*
    253 F.3d 1180 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATE CASES

*In re Ashanti Goldfields Securities Litigation, No. CV 00 0717(DGT)*
    2004 WL 626810 (E.D.N.Y. Mar. 30, 2004) . . . . . . . . . . . . . . . . . . . . . . 8

*Starbucks v. Superior Court,*
    168 Cal. App. 4th 1436 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES CON'T.

CASES                                                                    Pages

*Vasquez v. Superior Court*
    4 Cal. 3d 800 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

### DOCKETED CASES

*Batmanghelich v. Sirius XM Radio, Inc.,*
    Case No. 09-9190-VBF (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . 19

*Cohorst v. BRE Properties*
    Case No. CV-10-02666-JM (S.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . 19

*Greenberg v. E-Trade Financial Corporation,*
    Case No. BC360152 (LASC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Marenco v.Visa,*
    Case No. 10-08022-DMG (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . 19

*Skuro v.BMW, ATX,*
    Case No. 10-8672-GW (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 19

### FEDERAL STATUTES

Class Action Fairness Act, 28 U.S.C. §1715 . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R Civ. P.
    23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    23(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

### STATE STATUTES

Cal. Penal Code
    §632 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    §632.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    §637.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1
2
3

# TABLE OF AUTHORITIES CON'T.

4  CASES                                                           Pages

5
## OTHER AUTHORITIES
6

Manual for Complex Litigation
    § 21.63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    § 21.632 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Practice & Procedure
    §1777 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

vi

## I.     **INTRODUCTION**

In this class action lawsuit, Plaintiff Igor Shvager alleges that Defendants Viasat, Inc. and Viasat Communications, Inc. ("ViaSat") recorded telephone calls to customer service representatives, made by consumers in California, who reasonably expected that no one would be recording their conversation with the customer service representative they spoke with, without disclosing that their telephone calls would be recorded.  Plaintiff contends that the recording of these calls without consent violated California's Invasion of Privacy Act, California Penal Code § 630, *et seq*. (the "Privacy Act").  The complaint seeks statutory damages on behalf of Plaintiff and other Class Members.  The Parties have reached a settlement which, upon final approval, will resolve all claims, and is fair, reasonable and adequate.  The Parties respectfully request preliminary approval of the proposed settlement.[1]

In sum, the Agreement provides monetary relief and non-monetary relief for approximately 3,769 Class Members.  Specifically, the settlement provides Class Members with an ***automatic*** one-time cash payment, from a Common Fund to be established by ViaSat in the total amount of $210,000 (including accrued interest).  The Common Fund is entirely non-reversionary.  Any unclaimed or uncashed funds will be distributed as *cy pres* to The University of California, Berkeley Center for Law & Technology - Information Privacy Programs, subject to the approval of the Court.  The terms of the settlement compare favorably with settlements reached in other class actions alleging violations of the Privacy Act.

In addition to the foregoing relief, the settlement also provides important non-monetary relief in the form of a change in ViaSat's business practices.  As a result of this lawsuit, ViaSat agrees to comply with California Penal Code §§ 632

---

[1] All capitalized terms herein have the same meaning as set forth in the Settlement Agreement and Release (the "Agreement").

1   and 632.7 by providing notice prior to recording or monitoring customer service
2   telephone calls.

3        ViaSat has also agreed to pay all costs incurred by the Settlement
4   Administrator in providing notice and administering the settlement.  These amounts
5   will be paid separate and apart from the Common Fund, and will **not** reduce the
6   benefits available under the Settlement.

7        Moreover, ViaSat has agreed not to oppose a request by Class Counsel for
8   attorneys' fees and expenses totaling $150,000, and a service award to the Plaintiff
9   of $5,000.  Significantly, these amounts will be paid separate from, and in addition
10  to, the Common Fund, and will **not** reduce the benefits available under the
11  settlement.

12       Accordingly, Plaintiff respectfully requests that the Court enter an Order
13  which: (1) preliminarily approves the Class settlement; (2) certifies the settlement
14  Class for the purpose of effectuating the settlement; (3) approves the form and
15  method of notice of the settlement and of the pendency of the litigation to the Class
16  and order that such notice be given; and (4) schedules a hearing for final approval
17  of the settlement.  ViaSat does not oppose the entry of an order similar to the form
18  attached as Exhibit A to the Agreement.

19  **II.    FACTUAL BACKGROUND**

20       Plaintiff initiated this action on October 24, 2012, in the Los Angeles
21  Superior Court.  The Complaint against ViaSat was brought on behalf of Plaintiff
22  and a class of California residents for ViaSat's alleged violations of the Privacy
23  Act, requesting injunctive relief and statutory damages.  On November 29, 2012,
24  2012,ViaSat removed this action to the United States District court, Central District
25  of California, pursuant to 28 U.S.C. §1332, based upon diversity of jurisdiction and
26  the Class Action Fairness Act of 2005.  Plaintiff elected not to contest removal.

27

28

ViaSat is a leading provider of high-speed fixed and mobile broadband services, advanced satellite and wireless networks and secure networking systems, products and services. ¶9.[2] ViaSat's retail and wholesale broadband satellite services are offered under the Exede and WildBlue brands which provide two-way satellite-based broadband internet access to consumers and small businesses in the United States. *Id.*

In his Complaint, Plaintiff alleges ViaSat had a policy and practice of intentionally recording telephone calls without prior consent. ¶1. No consent was sought or received, despite that callers were providing personal, financial and confidential information, and thus had a reasonable expectation of privacy in the communications. ¶¶ 19, 36, 37. The Complaint asserts two causes of action based on violations of California Penal Code §§ 632 and 632.7.

ViaSat filed its Answer to the Complaint on January 7, 2013 asserting specific denials and numerous affirmative defenses.

Thereafter, the Parties agreed to engage in extensive discovery on a variety of topics relevant to liability and damages. To further this, the Parties discussed at length the factual and legal issues raised by the claims and defenses asserted in the Complaint. Plaintiff requested and ViaSat supplied Plaintiff with detailed information and documentation. Among other things, ViaSat provided information, concerning, *inter alia*, (1) the adoption, implementation, and enforcement of ViaSat's policies and procedures regarding the recording and monitoring of inbound and outbound telephone calls with persons in California; (2) the call technology policies; (3) the number of inbound and outbound calls that were recorded with persons in California during the Class Period; (4) the reasons and uses for recording telephone calls; (5) the extent (if any) to which ViaSat notified persons in California that their telephone calls would be recorded and/or monitored; (6) the retention of the audio recordings of telephone calls with persons

---

[2] Citations to "¶_" are to Plaintiff's Complaint.

3

1  in California; and (7) ViaSat's compliance, or lack thereof, with the requirements
2  of Penal Code section 632 and/or 632.7.

3       The information and documentation discovered as a result of these efforts,
4  have allowed Class Counsel to understand the full breadth of actions taken by
5  ViaSat relative to the Privacy Act and the risks involved in further litigation. The
6  settlement negotiations concluded successfully and the Parties executed a
7  Memorandum of Understanding with respect to the proposed settlement terms.
8  Thereafter, the Parties continued to vigorously negotiate and finalize all of the
9  settlement terms and drafted the formal settlement documents, including the
10  exhibits to the settlement which spanned over a period of many months.

11       The Settlement Agreement entered into on September 6, 2013, embodies a
12  comprehensive resolution of all claims encompassed in the Action.

13  **III.  OVERVIEW OF THE PROPOSED SETTLEMENT**

14       The proposed settlement is the result of extensive arm's-length negotiations
15  between the parties. Under the terms of the Agreement, ViaSat has agreed to settle
16  the Class Members' claims on the following terms:

17       **A.  Settlement Class**

18       The Agreement provides for certification of a class pursuant to Fed. R. Civ.
19  Pro. 23(b)(3), consisting of all residents in California, (1) who are not customers of
20  ViaSat and bound to an arbitration clause with ViaSat, (2) who participated in one
21  or more inbound and/or outbound telephone calls with a representative of ViaSat
22  between July 1, 2012 and the date of entry of the Preliminary Approval Order, (3)
23  whose calls were recorded and/or monitored by ViaSat, and (4) who did not receive
24  a disclosure at the outset of the call that the telephone call would be recorded
25  and/or monitored. Agreement, ¶ 1.1.

26  ///
27  ///
28  ///

4

**B.     Settlement Consideration**

        **1.     Cash Benefit to Class Members**

ViaSat will establish a non-reversionary Common Fund of $210,000 (including accrued interest), from which Class Members will automatically receive a one-time cash payment.  Each Class Member (approximately 3,769) will be paid a *pro rata* share of the Common Fund.  Agreement, ¶¶ 1.4, 2.2.

Significantly, the Parties have streamlined the settlement process for receiving the monetary benefits from the Common Fund.  ViaSat will ***automatically*** distribute the Settlement Amount to all Class Members (1) for whom it is able to identify a U.S. postal mailing address in its records, or through a reverse look-up based on available telephone numbers in its records, without requiring ***any proof of claim form*** (the "Direct Notice" Class Members), or (2) for whom it is able to identify an email address and who provide a mailing address in response to the Email Notice (the "Email Notice" Class Members), or (3) other Class Members who did not receive the Direct Notice or Email Notice, but otherwise demonstrate their eligibility by simply providing basic information, such as their name, address, and the relevant telephone number used.  Agreement, ¶¶ 2.2, 3.3, 3.5.

        **a.     *Cy Pres* Distribution of Settlement Amount Remainder**

In the event that any portion of the Common Fund remains unclaimed, or any check paid to a Class Member remains uncashed for more than 180 days after issuance, then such unclaimed or uncashed funds will revert for *cy pres* distribution to The University of California, Berkeley Center for Law & Technology - Information Privacy Programs ("BCLT"), subject to the approval of the Court, which is an independent, non-profit 501(c)(3) organization.  BCLT is a leading institution for research, education, and policy development in consumer protection, privacy law, and e-commerce and is home to some of the most prominent faculty

1   members and policy makers on these issues in the country.  BCLT intends to use

2   any *cy pres* distribution it may receive to expand and support its information

3   privacy programs by engaging with students, businesses, consumers and regulators.

4   Agreement, ¶ 2.3.  *See also* Declaration of Zev B. Zysman In Support of Motion for

5   Preliminary Approval, ¶ 7, Exhibit A which attaches a copy of the written proposal

6   from The University of California, Berkeley Center for Law & Technology -

7   Information Privacy Programs.  The Parties carefully selected this non-profit

8   organization in compliance with *Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir.

9   2012) and *Dennis v. Kellogg* , 697 F.3d 858 (9th Cir. 2012).

10          **C.      Non-Monetary Relief**

11          The settlement also provides for an important  change in Viasat's business

12  practices.  ViaSat agrees, unless there is a change in California law, to comply with

13  the requirements of Penal Code sections 632 and 632.7 by providing notice prior to

14  recording or monitoring of customer service calls.  Agreement, ¶ 2.1.

15          **D.      Payment of Settlement Administration Expenses**

16          ViaSat has selected KCC Class Action Services, an experienced and

17  reputable settlement administration company, to administer the settlement.

18  Importantly, the cost of settlement administration and notice shall be borne

19  exclusively by ViaSat separate and in addition to the Common Fund.  Agreement,

20  ¶ 2.7.

21          **E.      Payment of Attorneys' Fees and Costs to Class Counsel and**

22                  **Service Payment to Class Representative**

23          ViaSat agrees not to oppose Class Counsel's request for attorneys' fees and

24  costs of $150,000, in consideration of the time and effort they have expended for

25  the benefit of the Plaintiff and Class Members, subject to Court approval.   Class

26  Counsel will file an application to the Court for a fee and expense award in advance

27  of the deadline for filing objections, pursuant to *In re Mercury Interactive Corp.*

28  *Sec. Litig.*, 618 F.3d 988, 2010 WL 3239460 (9th Cir. 2010).  All attorneys' fees

6

1  and costs awarded following a motion by Class Counsel at the Final Fairness

2  Hearing will be paid by ViaSat separate and in addition to the Common Fund, and

3  will *not* reduce the benefits available under the settlement.  The issue of attorneys'

4  fees and costs was negotiated at arm's-length only *after* agreement was reached on

5  all substantive terms of the settlement.  Agreement,  ¶¶ 2.4, 2.6.

6         Moreover, ViaSat agrees to pay a modest service payment to the Class

7  Representative of $5,000, subject to Court approval, in light of his willingness to

8  devote the time and energy to prosecuting this litigation and in representing the

9  Class.  Agreement, ¶ 2.5.

10  **IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED**

11         "Parties may settle a class action before class certification and stipulate that a

12  defined class be conditionally certified for settlement purposes."  *In re Wireless*

13  *Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citing *Molski v.*

14  *Gleich*, 318 F.3d 937 (9th Cir. 2003)).  For the purpose of conditionally certifying

15  the class for settlement purposes, the Court evaluates the relevant factors under

16  Rule 23:

17         (1)    the class is so numerous that joinder of all members is impracticable;

18         (2)    there are questions of law or fact common to the class;

19         (3)    the claims or defenses of the representative parties are typical of the

20  claims or defenses of the class; and

21         (4)    the representative parties will fairly and adequately protect the

22  interests of the class.

23  Fed. R. Civ. Pro. 23(a); *see also In re Wireless Facilities, Inc.*, 253 F.R.D. at 610.

24         In addition, Plaintiff must establish that one of the factors under Rule 23(b)

25  is met:  (1) there is a risk of inconsistent or unfair adjudication if parties proceed

26  with separate actions; (2) the defendant acted or refused to act on grounds generally

27  applicable to the class, making injunctive or declaratory relief appropriate to the

28  class as a whole; or (3) common questions of law or fact predominate and class

7

1   resolution is superior to other available methods for fair and efficient adjudication

2   of the controversy.  Fed. R. Civ. Pro. 23(b).

3       Here, the Settlement Class satisfies the Rule 23(a) elements of numerosity,

4   commonality, typicality, and adequacy of representation, and additionally satisfies

5   Rule 23(b)(3), as set forth in full below.

6       **A.     Numerosity**

7       To satisfy numerosity, Rule 23(a)(1) requires that the proposed class be "so

8   numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1).

9   "Impracticability means difficulty or inconvenience of joinder; the rule does not

10  require impossibility of joinder." *In re Ashanti Goldfields Secs. Litig.*, No. CV 00

11  0717(DGT), 2004 WL 626810, at *11 (E.D.N.Y. Mar. 30, 2004) (quoting *In re*

12  *Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999)).  Plaintiff need not allege

13  the exact number or identity of class members to satisfy the numerosity

14  requirement. *See Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 637 (N.D. Cal.

15  2007).

16      Here, the numerosity requirement is clearly satisfied.  According to ViaSat's

17  records, the Class is comprised of approximately 3,769 Class Members.  The

18  number of class members demonstrates that joinder is both difficult and

19  impracticable. *See, e.g., Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198

20  (S.D.N.Y. 1992) (requirement satisfied when joinder "would needlessly complicate

21  and hinder efficient resolution of the litigation."); *Korn v. Franchard Corp.*, 456 F.

22  2d 1206, 1209-10 (2d Cir. 1992) (finding joinder impracticable for a class of 212

23  members).  Accordingly, Rule 23(a)(1)'s numerosity requirement is readily

24  satisfied.

25      **B.     Commonality**

26      Next, Rule 23(a)(2) requires a showing of "questions of law or fact common

27  to the Class." Fed. R. Civ. Pro. 23(a)(2).  "The existence of shared legal issues

28  with divergent factual predicates is sufficient, as is common core of salient facts

8

coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1998).  It can be established by showing "that the class is united by a common interest."  *Blackie v. Barrack*, 524 F.2d 895, 901 (9th Cir. 1975) (holding "slight differences in class members' positions" will not defeat commonality).  The existence of "shared legal issues" will satisfy the commonality requirement.

Here, all the Class Members allege that ViaSat violated the same statutory provisions, Penal Code sections 632 and 632.7 based on the surreptitious recording and/or monitoring of telephone conversations.  All Class Members seek the same remedies under the same legal theories of recovery.  The same factual predicates apply to each and every Class Member.  The settlement compensates Class Members for these identical claims.  Under these circumstances, the commonality requirement is satisfied under Rule 23(a)(2).

## C. <u>Typicality</u>

The typicality requirement of Rule 23(a)(3) is met if the claims of the named plaintiff are typical of the class, though "they need not be substantially identical." *Hanlon*, 150 F. 3d at 1020.  Factual differences may exist between the class and the named plaintiff, provided the claims arise from the same events or course of conduct and are based upon the same legal theories.  *Id*.  The typicality and commonality elements under Rule 23(a) "tend to merge" because both assess whether the claims of the class and the named plaintiffs are sufficiently interrelated to make class treatment appropriate.  *Gen. Tel. Co. of South West v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).  Moreover, the focus is "'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff."  *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Here, Plaintiff's claims arise from the same factual matrix and are based on the same legal theory as the claims of the absent class members.  The claims of

9

Plaintiff and the other Class Members all arise from the "same course of events" that is, ViaSat's alleged secret recording and/or monitoring of telephone calls without adequate notice or consent.   This is the same claim alleged on behalf of all Class Members.  All Class Members also seek the same relief.  Accordingly, this lawsuit is based on conduct that is not unique to Plaintiff but is common to all Class Members.  Plaintiff's claims are thus typical of the claims of the members of the Class.

### D.     Fair and Adequate Representation

Rule 23(a)(4) requires the court to ensure that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires (1) that the proposed representative Plaintiff does not have conflicts of interest with the proposed class, and (2) that Plaintiff is represented by qualified and competent counsel. *Hanlon*, 150 F. 3d at 1020.

Under this standard, Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff's interests are fully aligned with the Class Members, and no conflict of interest exists.  Additionally, Plaintiff is represented by competent counsel who have outstanding records of accomplishments in the prosecution of complex consumer class actions in both state and federal courts.  Zysman Decl. ¶¶ 13, 16.

### E.     Common Questions of Law and Fact Predominate Over Any Questions Affecting Only Individual Members, And A Class Action Is Superior To Other Methods of Adjudication

Plaintiffs seek certification of a settlement Class under Rule 23(b)(3), in that "the actual interests of the parties can be served best by settling their difference in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A C.A. Wright, A.R Miller, & M. Kane, Federal Practice & Procedure §1777 (2d ed. 1986).  There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law or fact common to the members of the class predominate over any questions affecting

10

1  only individual members; and (2) a class action is superior to other available

2  methods for the fair and efficient adjudication of the controversy.  Fed. R Civ. P.

3  23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

4  *Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022;

5  *Wiener*, 255 F.R.D. at 668.  Rule 23(b)(3) encompasses those cases "in which a

6  class action would achieve economies of time, effort, and expense, and promote. ..

7  uniformity of decision as to persons similarly situated, without sacrificing

8  procedural fairness or bringing about other undesirable results."  *Amchem Prods.,*

9  *Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (citations omitted and alterations in

10  original).   Moreover, when assessing predominance and superiority, the Court may

11  consider that the class will be certified for settlement purposes only.  *Id*. at 618-

12  620.

### 1.    Common Questions Predominate Over Individual Issues

14       The Rule 23 (b)(3) predominance inquiry "tests whether proposed classes are

15  sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521

16  U.S. at 623.  "Predominance is a test readily met in certain cases alleging consumer

17  . . . fraud . . . ."  *Id.*  "When common questions present a significant aspect of the

18  case and they can be resolved for all members of the class in a single adjudication,

19  there is clear justification for handling the dispute on a representative rather than on

20  an individual basis."  Fed. Prac. & Proc., § 1778; *Gen. Tel. Co. of Southwest v.*

21  *Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that commonality and typicality tend

22  to merge).

23       The predominance requirement is satisfied here.  As discussed above, the

24  claims of the Class here are sufficiently cohesive to warrant certification.  Plaintiff

25  alleges that all Class Members share a common nucleus of facts and potential legal

26  remedies – the same facts and law govern their claims.  This Court could try their

27  claims in representative fashion by common evidence regarding Plaintiff's and

28  Class Members' claims, and the identical law applies.  Moreover, all of the Class

1   Members seek damages based on the same allegations.  Under these circumstances,

2   there is sufficient basis to find that the requirements of Rule 23(b)(3) are present.

3   *See Hanlon*, 150 F.3d at 1022.

4           **2.**     **A Class Action is the Superior Method to Settle This**

5                    **Controversy**

6         Rule 23(b)(3) sets forth the relevant factors for determining whether a class

7   action is superior to other available methods for the fair and efficient adjudication

8   of the controversy.  These factors include: (i) the class members' interest in

9   individually controlling separate actions; (ii) the extent and nature of any litigation

10  concerning the controversy already begun by or against class members; (iii) the

11  desirability or undesirability of concentrating the litigation of the claims in the

12  particular forum; and (iv) the likely difficulties in managing a class action.  Fed. R.

13  Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92

14  (9th Cir. 2001).  "[C]onsideration of these factors requires the court to focus on the

15  efficiency and economy elements of the class action so that cases allowed under

16  subdivision (b)(3) are those that can be adjudicated most profitably on a

17  representative basis."  *Zinser*, 253 F.3d at 1190 (citations omitted); *see also*

18  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the

19  superiority requirement may be satisfied where granting class certification "will

20  reduce litigation costs and promote greater efficiency").

21        Application of the Rule 23(b)(3) "superiority" factors shows that a class

22  action is the preferred procedure for this Settlement.  The amount of damage to

23  which an individual class member would be entitled is not large.  *Zinser*, 253 F.3d

24  at 1191.  It is neither economically feasible, nor judicially efficient, for the

25  thousands of Class Members to pursue their claims against Defendants on an

26  individual basis.  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980);

27  *Hanlon*, 150 F.3d at 1023; *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971).

28

1   Moreover, were a class not certified, many (if not all) Class Members would

2   not bring claims for the violations alleged, because it is suspected that few (if any)

3   even know their calls were recorded.  Defendants' alleged unlawful conduct, by its

4   very nature, is secret, in nature.  Consequently, class treatment is a superior method

5   for adjudicating these claims, and a class action is the preferred method of

6   resolution.

7   Additionally, the fact of settlement eliminates any potential difficulties in

8   managing the trial of this action as a class action.  When "confronted with a request

9   for settlement-only class certification, a district court need not inquire whether the

10   case, if tried, would present intractable management problems . . . for the proposal

11   is that there be no trial."  *Amchem*, 521 U.S. at 620.

12   **V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS**

13   **WARRANTED**

14   After the Court makes a determination that the proposed class satisfies the

15   criteria set forth in Rule 23(a) and at least one of the subsections of Rule 23(b), it

16   must make a "preliminary determination of the fairness, reasonableness, and

17   adequacy of the settlement Terms."  Fed. Judicial Ctr., Manual for Complex

18   Litigation § 21.632 (4th ed. 2004).  The Parties request that this Court preliminarily

19   approve the Settlement not only because public policy favors the settlement of

20   complex class actions such as this one, but also, as demonstrated herein, because

21   the Agreement has achieved excellent results for the Class.  The Parties respectfully

22   submit that the proposed settlement is fair, reasonable, and adequate and warrants

23   preliminary approval by this Court.

24   **A.    Standard for Preliminary Approval of Settlement**

25   Federal Rule of Civil Procedure 23(e) requires judicial approval for any

26   compromise of claims brought on a class basis.  Approval of a proposed settlement

27   is a matter within the discretion of the district court.  *See, e.g., Class Plaintiffs v.*

28   *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  This discretion should be

13

1  exercised in the context of a public policy which strongly favors the pretrial

2  settlement of class action lawsuits.  *Id.*; *Officers for Justice v. Civil Serv. Comm'n*,

3  688 F.2d 615, 625 (9th Cir. 1982) ("Voluntary conciliation and settlement are the

4  preferred means of dispute resolution . . . ."); *Van Bronkhorst v. Safeco Corp.*, 529

5  F.2d 943, 950 (9th Cir. 1976); *In re NVIDIA Corp. Deriv. Litig.*, No.

6  C-06-06110-SBA, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008).  As the

7  Court in *Nelson v. Bennett* explained:

8       [T]he suggestion that there is no federal policy to encourage settlement

9       truly borders on the absurd.  Not only have federal courts long

10       recognized the public policy in favor of the settlement of complex

11       securities actions, but the Ninth Circuit in particular has stated:  "It

12       hardly seems necessary to point out that there is an overriding public

13       interest in settling and quieting litigation.  This is particularly true in

14       class action suits . . . which frequently present serious problems of

15       management and expense."  Especially in these days of burgeoning

16       federal litigation, the promotion of settlement is as a practical matter,

17       an absolute necessity.

18  662 F. Supp. 1324, 1334 (E.D. Cal. 1987) (internal citations omitted) (quoting *Van*

19  *Bronkhorst*, 529 F.2d at 950).

20       Beyond this strong judicial policy favoring settlements, "the Court need only

21  conclude that the settlement of the claims on the agreed upon terms is within the

22  range of possible approval."  *In re NVIDIA Corp.*, 2008 WL 5382544, at *2.  In

23  making this determination, the Court evaluates whether the settlement is "fair,

24  reasonable, and adequate," and that it is "not the product of fraud or overreaching

25  by, or collusion between, the negotiating parties."  *Id.* (quoting *Officers for Justice*

26  *v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982).  The court need not

27  "engage in analysis as rigorous as is appropriate for final approval."  Manual for

28  Complex Litigation, § 21.63 commentary, p. 489; *see also Alberto v. GMRI, Inc.*,

252 F.R.D. 652, 665 (E.D. Cal. 2008) (stating that the court need do no more than a "cursory review of the terms of the parties' settlement for the purpose of resolving any glaring deficiencies").

An evaluation of the costs and benefits of settlement must be tempered by a recognition that any compromise involves concessions of the part of all of the settling parties. *In re NVIDIA Corp.*, 2008 WL 5382544, at *3. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of higher hopes." *Id.* (quoting *Officers for Justice*, 688 F.2d at 624) (internal quotation marks omitted). As the Fifth Circuit noted in *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977): "The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained" (internal quotation marks omitted).

Applying the foregoing standards in this case, it is respectfully submitted that the proposed settlement between Plaintiff and ViaSat should be preliminarily approved.

**B.**     **The Proposed Settlement Is Within the Range of Possible Approval**

The proposed settlement here unquestionably falls well within the range of possible approval. There is no evidence of fraud or collusion, and the settlement is the result of good faith arm's-length bargaining by counsel who are familiar with the issues in the case and the strengths and weaknesses of their client's positions. The settlement fairly reflects concessions by both sides in order to achieve a settlement that is fair and reasonable. The settlement represents a favorable result against a sophisticated and well-represented defendant.

The settlement establishes a non-reversionary Common Fund to be shared among all Class Members, mandates injunctive relief in the form of changes in Defendants' business practices by agreeing not to record or monitor telephone calls

1   in the future without providing notice of recording or monitoring to prospective

2   consumers at large, as well as potential *cy pres* relief, on claims that ViaSat

3   disputes.  The settlement will also eliminate the risk inherent in non-certification,

4   and the risks that the Class may not prevail on their claims against ViaSat at trial or

5   on appeal.

6        The proposed settlement is the result of intensive arm's-length bargaining

7   and was achieved only after Class Counsel had engaged in sufficient investigation

8   and discovery and difficult negotiations.  Class Counsel's investigation/discovery

9   included: (a) extensive investigation and drafting of class action complaint, which

10  included researching of the applicable law with respect to the claims asserted

11  therein and the potential defenses thereto; (b) drafting class certification and merits

12  discovery, including  special interrogatories, requests for production of documents,

13  and requests for admissions; (c) reviewing information and confirmatory

14  documentation produced by ViaSat concerning, *inter alia*, the number of inbound

15  and outbound calls that were recorded with persons in California during the Class

16  Period, the reasons and uses for recording telephone calls, the extent (if any) to

17  which ViaSat notified persons in California that their telephone calls would be

18  recorded, the information technology systems used by ViaSat to enable call

19  recording and monitoring, and ViaSat's policies, procedures, and practices

20  regarding the recording,  monitoring and retention of inbound and outbound

21  telephone calls with persons in California; (d) drafting class certification motion

22  (withheld filing following agreement to settle); and (e) engaging in numerous

23  settlement discussions with defense counsel, including drafting settlement

24  proposals.  Zysman Decl. ¶¶ 3-5.

25       In sum, by the time Plaintiff agreed to settle, he and his counsel had adequate

26  information to assess the strengths and weaknesses of his case, and had sufficient

27  grasp of the legal and factual issues in the litigation to make a thorough appraisal of

28  the adequacy of the settlement to provide meaningful relief to the Class.

1       In addition, the issues have been contested by extremely capable counsel on

2   both sides experienced in consumer and class action litigation.  During the course

3   of this litigation and the Parties' settlement discussions, ViaSat vigorously argued,

4   *inter alia*, that telephone calls to ViaSat's business could not give rise to an

5   objectively reasonable expectation that the calls would not be recorded, so that the

6   calls at issue could not have been "confidential communications" as required by

7   California Penal Code § 632; that customers consented to the recording, either

8   expressly or impliedly, and that, even in the event liability were established, the

9   amount of statutory damages under Penal Code section 637.2 was constitutionally

10   excessive in light of the fact that none of the unlawfully recorded phone calls

11   resulted in any actual damages or economic harm.  Courts have rejected

12   constitutional challenges to statutes providing for statutory damages of $1,000 or

13   less in the absence of economic harm.  *See, e.g., Mourning v. Family Publications*

14   *Services, Inc.*, 411 U.S. 356 (1973) (statutory damages of $100 to $1,000 under

15   Truth in Lending Act).  Penal Code section 637.2, however, provides for a higher

16   amount of statutory damages.[3]

17       Moreover, Plaintiff faced risks that class certification would not have been

18   granted.  Plaintiff believes that he would have prevailed on class certification and

19   the fact that class certification has been granted in other cases based on a failure to

20   disclose that telephone calls were being recorded supports Plaintiff's position about

21   the propriety of class certification.  *See, e.g., Thomasson v. GC Services, Ltd*

22   *Partnership*, 2011 WL 1339063 (S.D. Cal. 2011).  Nevertheless, Courts have

23

24   _____

25   [3] Pursuant to California Penal Code § 637.2, a person injured by a Privacy Act violation is entitled to *either* a statutory damage amount of $5,000 or three times the amount of his or her actual damages.  ViaSat has argued that the statutory damage

26   amount of $5,000 per recorded call is unconstitutionally excessive given that Plaintiff has not alleged any quantifiable out-of-pocket losses.  *See, e.g., Starbucks*

27   *v. Superior Court*, 168 Cal. App. 4th 1436 (2008) (interpreting the Labor Code statutory damage provision at issue in that case to require proof of actual injury).  As

28   such, Plaintiff faced a serious risk that no court would ever award the full amount of statutory damages available under Penal Code § 637.2.

discretion when it comes to determining whether or not to certify a class and ViaSat would have vigorously contested a motion for class certification.

In addition to the risks faced before and at trial, and appeal of any judgment or verdict in Plaintiff's favor, Plaintiff faced the further cost of litigating this dispute which would only increase as trial approaches.  As noted by Judge Armstrong:

> Had Federal Plaintiffs continued to litigate, they would have faced a host of potential risks and costs, including the potential for successful attacks on the pleadings, high costs associated with lengthy and complex litigation, potential loss on summary judgment, and risks and costs associated with trial, should the case progress that far.
>
> Indeed, even a favorable judgment at trial may face post-trial motions and even if liability was established, the amount of recoverable damages is uncertain.  The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation.

*In re NVIDIA Corp.*, 2008 WL 5382544, at *3.  The same observations ring true here.

Plaintiff's counsel are familiar with several other class action settlements approved by California state and federal courts which allege similar privacy-related violations under Penal Code sections 632 and/or 632.7 on behalf of California consumers.  Compared to settlements in these other Privacy Act cases, Class Members in the instant case will receive a recovery that is comparable, if not superior, on a per class member basis.  When applied to the estimated number of Class Members (3,769), the Settlement Amount equates to approximately $55.71 per Class Member.  Of course, to the extent that the claims rate is less than 100%, the amount allocable to each Class Member will be higher.  Following is a

18

summary of class action settlements in five other Privacy Act cases for which information is available.

a)  *Batmanghelich v. Sirius XM Radio, Inc.*, United States District Court, Central District of California, Case No. 09-9190-VBF – 3,500,000 potential class members settled for $7,000,000 (approximately $2.00 per class member);

b)  *Greenberg v. E-Trade Financial Corporation*, Los Angeles Superior Court, Case No. BC360152 – 1,400,000 class members settled for $5,625,000 ($4.02 per class member);

c)  *Marenco v. Visa*, United States District Court, Central District of California, Case No. 10-08022-DMG  – 648,000 potential class members settled for $13,000,000 ($20.00 per class member);

d)  *Cohorst v. BRE Properties*, United States District Court, Southern District of California, Case No. 10-02666-JM – 1,170,000 million potential class members settled for $3,500,000 ($2.99 per class member); and

e)  *Skuro v. BMW, ATX*, United States District Court, Central District of California, Case No. 10-8672-GW – 43,000 potential class members settled for $300,000 ($6.98 per class member or, alternatively, a six month extension of the BMW Assist basic safety plan valued by the parties at $100).

In sum, the present settlement will provide meaningful and clearly defined monetary and injunctive relief to the Class and others in place of the uncertainty of continued litigation and trial.  Given the uncertainty and substantial expense of going forward with trial against ViaSat, it is the informed opinion of Plaintiff's experienced counsel that the proposed settlement is eminently fair, reasonable and adequate and warrants judicial approval.  Zysman Decl.  ¶¶ 3, 5, 7, 14-15; *see Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)

1  ("Great weight" is accorded to the recommendation of counsel, who are most

2  closely acquainted with the facts of the underlying litigation.").  Accordingly,

3  Plaintiff requests preliminary approval of the settlement.

4  **VI.    THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE**

5  **AND CLASS NOTICE SHOULD BE APPROVED**

6  Plaintiff requests that this Court approve the proposed form of notice which

7  will advise Class Members of the pendency of this action, the proposed settlement,

8  and Class Counsel's application for a fee and expense award and for an incentive

9  compensation award to the Class Representative.  Plaintiff and ViaSat agree that

10  the form of notice is fair and adequate under the circumstances.

11  The threshold requirement concerning the sufficiency of class notice is

12  whether the means employed to distribute the notice is reasonably calculated to

13  apprise the class of the pendency of the action, of the proposed settlement, and of

14  the Class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417

15  U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

16  306, 315 (1950).  The mechanics of the notice process are best left to the discretion

17  of the court, subject only to the broad "reasonableness" standards imposed by due

18  process.  In this Circuit, it has long been the case that a notice of settlement will be

19  adjudged satisfactory if it "generally describes the terms of the settlement in

20  sufficient detail to alert those with adverse viewpoints to investigate and to come

21  forward and be heard." *Churchill*, 361 F.3d at 575 (citing *Mendoza v. Tucson Sch.*

22  *Dist. No.1*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025 (notice

23  should provide each absent class member with the opportunity to opt-out and

24  individually pursue any remedies that might provide a better opportunity for

25  recovery).

26  The proposed Class Notice satisfies these content requirements.  Multiple

27  forms of Notice will be provided.   First, the Settlement Administrator will mail

28  Direct Notice to all Class Members for whom ViaSat is able to identify a valid U.S.

Postal mailing address in its internal records or through a "reverse lookup" based on available phone numbers in its records.  Second, the Settlement Administrator will provide a short-form notice (Email Notice) via email to all Class Members for whom ViaSat has a valid email address but no U.S. postal mailing address.  The Direct Notice and Email Notice are attached as Exhibits "C" and "D" to the Agreement.  Third, the settlement provides for the establishment of a Settlement Website on which the Settlement Administrator will make available the Full Notice (Exhibit "B" to the Agreement), Settlement Agreement, the Plaintiff's Complaint, Defendants' Answer, the Order granting preliminary approval of the settlement, and any other documents agreed to by the Parties.  The Settlement Website will include in simple, easy-to-understand language: (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class Members can obtain settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the settlement; (5) an explanation that any claims against ViaSat that could have been litigated in this action will be released if the Class Member does not opt out from the Settlement; (6) the names of Class Counsel and information regarding attorneys' fees and expenses, and Plaintiff's incentive award[4]; (7) the Final Fairness Hearing date; and (8) an explanation of eligibility for appearing at the Final Fairness Hearing.  Zysman Decl. ¶ 11.  Fourth, to ensure that notice reaches as many potential Class Membrs as possible, the Agreement also provides for Publication Notice (Exhibit "E" to the Agreement) which will be published in the California Edition of *USA Today* in a 1/4 page advertisement.

Collectively, the proposed class notice provides Class Members with sufficient information to make an informed and intelligent decision about the

---

[4] The Full Notice will also inform Class Members that Plaintiff's Motion for Attorneys' Fees will be filed prior to the objection deadline and a copy can be obtained from the Settlement Website.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 2010 WL 3239460 (9th Cir. Aug. 18, 2010).

1  settlement.  As such, it satisfies the content requirements of Rule 23.  *See In re*

2  *Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D.

3  Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and

4  parties in the litigation entitled to participate, including the right to exclude

5  themselves from the class").  Moreover, the dissemination of the proposed Notice

6  constitutes the best notice practicable under the circumstances and fully complies

7  with the requirements of Rule 23.

8      In addition, counsel for ViaSat will timely effect service on the appropriate

9  Federal and State officials of the documents and other information required to be

10  served pursuant to the terms of the Class Action Fairness Act, 28 U.S.C. §1715

11  ("CAFA").

12      The proposed notice plan fully comports with the requirements of Fed. R.

13  Civ. P. 23(c)(2)(A), CAFA, and due process.  The proposed form of the Class

14  Notice apprises Class Members in a fair and neutral way of the settlement, as well

15  as their rights with respect to the settlement.

16  **VII.   THE FINAL SETTLEMENT HEARING**

17      Following the approval and entry of the proposed Preliminary Approval

18  Order and notice to Class Members pursuant thereto, the Parties will request that

19  this Court conduct a Final Fairness Hearing to determine whether the judgment and

20  order should be entered (1) approving the proposed settlement as fair, reasonable

21  and adequate to the Class; (2) dismissing this action on the merits and with

22  prejudice as against ViaSat with respect to the Class; (3) barring Plaintiff and all

23  Class Members from prosecuting, pursuing or litigating any of the Released

24  Claims, as defined in the Agreement, against ViaSat; and (4) awarding Class

25  Counsel's fees and expenses and granting an incentive compensation award to the

26  Class Representative.

27

28

## VIII.  **PROPOSED SCHEDULE OF EVENTS**

The Parties request that, should the Court grant this motion for preliminary approval, the Court also set a date for a Final Fairness Hearing at which time the Court can determine whether the Agreement is fair, adequate and reasonable.  The Parties propose the following schedule for the Final Fairness Hearing and other relevant dates:

| | |
|---|---|
| Last Day to Send Direct Notice and Email Notice to Class Members, publish Publication Notice in *USA Today*, and to Activate the Settlement Website | 45 days after entry of Preliminary Approval Order |
| Serving Notice on Appropriate Federal and State Officials | Within 10 days following the filing of Proposed Settlement Agreement |
| Last Day for Filing Motion In Support of Request for Attorneys' Fees and Costs and Class Representative's Incentive Payment | 16 days before objection deadline |
| Last Day for Filing Request For Exclusions or Objections to Settlement and Claims of Eligibility | 60 days after deadline to provide Class Notice |
| Last Day for Filing Motion In Support of Final Approval of Settlement and Response to Any Objections | 7 days before the Final Fairness Hearing |
| Final Fairness Hearing | Between 145 and 155 days after entry of Preliminary Approval Order |

///

///

///

IX.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court (1) preliminarily approve the terms of the settlement reached by the Parties; (2) certify the Settlement Class for the purpose of effectuating the settlement; (3) approve the form and method of notice of the settlement and of the pendency of the litigation to the Class and order that such notice be given; and (4) set a hearing for final approval of the settlement.

Dated: September 9, 2013                **LAW OFFICES OF ZEV B. ZYSMAN**
                                        A Professional Corporation


                                        ___/s/ Zev B. Zysman_____
                                           Zev B. Zysman

                                        15760 Ventura Boulevard, Suite 1915
                                        Encino, CA 91436
                                        Telephone:  (818) 783-8836
                                        Facsimile:   (818) 783-9985

                                        *Attorneys for Plaintiff and*
                                        *the Proposed Class*

24