**LAW OFFICES OF ZEV B. ZYSMAN**
A Professional Corporation
Zev B. Zysman (176805)
zev@zysmanlawca.com
15760 Ventura Boulevard,
16th Floor
Encino, CA 91436
Telephone:   (818) 783-8836
Facsimile:   (818) 783-9985

*Attorneys for Plaintiff and*
*the Settlement Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGOR SHVAGER, on Behalf of Himself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>VIASAT, INC, VIASAT COMMUNICATIONS, INC., and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No: CV 12-10180 MMM (PJW)<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:   March 10, 2014<br>Time:   10:00 a.m.<br>Ctrm:   780<br>Judge: Honorable Margaret M. Morrow |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     SUMMARY OF THE LITIGATION. . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    THE SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.    Settlement Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.    Settlement Consideration. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

              1.    Cash Benefit to Class Members. . . . . . . . . . . . . . . . . . 4

                    a.    *Cy Pres* Distribution of Settlement Amount Remainder. . . 5

        C.    Non-Monetary Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        D.    Payment of Settlement Administration Expenses . . . . . . . . . . . . . . 5

        E.    Payment of Attorneys' Fees and Costs to Class Counsel and Service
              Payment to Class Representative . . . . . . . . . . . . . . . . . . . . . . . 6

IV.     BENEFITS OF THE PROPOSED SETTLEMENT . . . . . . . . . . . . . . . . . 6

V.      CLASS NOTICE AND SETTLEMENT ADMINISTRATION. . . . . . . . . . . 7

VI.     THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
        SETTLEMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VII.    THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARDS FOR
        APPROVAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.    The Parties Could Identify the Strengths and Weaknesses of Their
              Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.    The Settlement Appropriately Balances the Risks of Litigation and
              the Benefit to the Settlement Class of a Certain Recovery. . . . . . . . . 13

        C.    The Risk Of Maintaining Class Action Status Through Trial . . . . . . . 14

        D.    The Relief Provided In The Settlement. . . . . . . . . . . . . . . . . . . . 15

        E.    The Extent Of Discovery Completed And The Stage Of
              Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        F.    The Recommendations of Experienced Counsel Heavily Favor
              Approval of the Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        G.    The Presence of a Governmental Participant. . . . . . . . . . . . . . . . . 17

        H.    Reaction of the Settlement Class Supports Approval of
              the Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

VIII.   THE CLASS SHOULD BE FINALLY CERTIFIED. . . . . . . . . . . . . . . . . . .  19

IX.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979)................................. 11, 12

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir.), *cert. denied*, 506 U.S. 953 (1992)............... 10, 18

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal.), *aff'd*, 661 F.2d 939 (9th Cir. 1981). ......... 10, 12, 17

*Fisher Brothers v. Cambridge-Lee Industrial, Inc.*,
630 F. Supp. 482 (E.D. Pa. 1985)................................. 17

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)..................................... 12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998). .................................. 19

*Hughes v. Microsoft Corp.*,
2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001). ............. 10, 11

*Kirkorian v. Borelli*,
695 F. Supp. 446 (N.D. Cal. 1998)................................ 18

*MWS Wire Industrial, Inc. v. Cal. Fine Wire Co.*,
797 F.2d 799 (9th Cir. 1986). ................................... 9

*Malchman v. Davis*,
761 F.2d 893 (2d Cir. 1985), *cert. denied*, 475 U.S. 1143 (1986). ......... 11

*Marshall v. Holiday Magic, Inc.*,
550 F.3d 1173 (9th Cir. 1977). .................................. 17

*In re Mego Finance Corp. Sec. Litigation*,
213 F.3d 454 (9th Cir. 2000). ................................... 11

*Newman v. Stein*,
464 F.2d 689 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972). .............. 9

*Officers for Justice v. Civil Serv. Commission*,
688 F.2d 615 (9th Cir. 1982). ................................ *passim*

*In re PaineWebber Ltd. P'ships Litigation*,
171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)............. 11

*Steinberg v. Carey*,
470 F. Supp. 471 (S.D.N.Y. 1979)................................ 9

*Torrisi v. Tucson Electric Power Co.*,
8 F.3d 1370 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).............. 10

*Utility Reform Project v. Bonneville Power Admin.*,
869 F.2d 437 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Warner Commc'ns Sec. Litigation*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). . . . . . . . . . 13

*In re Wash. Public Power Supply System Sec. Litigation*,
720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.* . . . . . . . . . . . . . . . . . . . . . 10

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Williams v. First National Bank*,
216 U.S. 582 (1910). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## FEDERAL STATUTES

28 U.S.C. §1715. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. Pro. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. Pro. 26. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## OTHER AUTHORITY

*Manual for Complex Litigation*, Section 30.42 (3d ed. 1995). . . . . . . . . . . . . . . . 11

iv

## I.  INTRODUCTION

On October 11, 2013, this Court preliminarily approved the Settlement of this action.[1]  Plaintiff Igor Shvager, on behalf of the Class, hereby seeks final approval of the settlement.  The settlement is fair, adequate and reasonable and should be approved.

Plaintiff and Class Counsel successfully negotiated a $210,000 non-reversionary Common Fund settlement on behalf of California consumers who allege that their telephone calls were secretly recorded by Defendants Viasat, Inc. and Viasat Communications, Inc. ("ViaSat") in violation of California's Invasion of Privacy Act, California Penal Code § 630, *et seq*. (the "Privacy Act").  Specifically, 1,479 Class Members will receive an ***automatic*** one-time cash payment from the Common Fund.  Any unclaimed or uncashed funds will be distributed as *cy pres* to The University of California, Berkeley Center for Law & Technology - Information Privacy Programs, subject to the approval of the Court.  The terms of the settlement compare favorably with settlements reached in other class actions alleging violations of the Privacy Act.

In addition to the foregoing relief, the settlement also provides important non-monetary relief in the form of a change in ViaSat's business practices.  Specifically, ViaSat agrees to comply with California Penal Code §§ 632 and 632.7 by providing notice prior to recording or monitoring customer service telephone calls which will benefit the public generally.

The settlement enjoys the overwhelming and unanimous support of the Class. The deadline for filing any objections to, or requests for exclusions from, the settlement passed on January 24, 2014.  After implementing the Court's ordered

---

[1] This memorandum incorporates by reference the definitions in the Settlement Agreement and Release ("Agreement") filed with the Court on or about September 9, 2013 and preliminarily approved by this Court's Order dated October 11, 2013.  All capitalized terms used herein shall have the same meanings as set forth in the Agreement, unless otherwise noted.

Notice Plan which included direct mailings of the Direct Notice to 1,652 Class Members via U.S. Mail, E-Mail Notice to 11 Class Members, publication on the Internet, and in the print and on-line California editions of *USA Today*, and allowing Class Members to weigh in, there were **no** objections or requests for exclusions filed.

Accordingly, for all the reasons set forth herein, Plaintiff respectfully requests that the settlement be granted final approval.[2]

## II.    SUMMARY OF THE LITIGATION

Plaintiff initiated this action on October 24, 2012, in the Los Angeles Superior Court.  The Complaint against ViaSat was brought on behalf of Plaintiff and a class of California residents for ViaSat's alleged violations of the Privacy Act, requesting injunctive relief and statutory damages.  On November 29, 2012, 2012, ViaSat removed this action to the United States District court, Central District of California, pursuant to 28 U.S.C. §1332, based upon diversity of jurisdiction and the Class Action Fairness Act of 2005.

ViaSat is a leading provider of high-speed fixed and mobile broadband services, advanced satellite and wireless networks and secure networking systems, products and services. ¶9.[3] ViaSat's retail and wholesale broadband satellite services are offered under the Exede and WildBlue brands which provide two-way satellite-based broadband internet access to consumers and small businesses in the United States.  *Id*.

In his Complaint, Plaintiff alleges ViaSat had a policy and practice of intentionally recording telephone calls without prior consent.  ¶1.  No consent was sought or received, despite that callers were providing personal, financial and confidential information, and thus had a reasonable expectation of privacy in the

---

[2] ViaSat does not oppose this Motion.

[3] Citations to "¶_" are to Plaintiff's Complaint.

communications.  ¶¶ 19, 36, 37.  The Complaint asserts two causes of action based on violations of California Penal Code §§ 632 and 632.7.

ViaSat filed its Answer to the Complaint on January 7, 2013 asserting specific denials and numerous affirmative defenses.

Thereafter, the Parties agreed to engage in extensive discovery on a variety of topics relevant to liability and damages.  To further this, the Parties discussed at length the factual and legal issues raised by the claims and defenses asserted in the Complaint.  Plaintiff requested and ViaSat supplied Plaintiff with detailed information and documentation.  Among other things, ViaSat provided information, concerning, *inter alia*, (1) the adoption, implementation, and enforcement of ViaSat's policies and procedures regarding the recording and monitoring of inbound and outbound telephone calls with persons in California; (2) the call technology policies; (3) the number of inbound and outbound calls that were recorded with persons in California during the Class Period; (4) the reasons and uses for recording telephone calls; (5) the extent (if any) to which ViaSat notified persons in California that their telephone calls would be recorded and/or monitored; (6) the retention of the audio recordings of telephone calls with persons in California; and (7) ViaSat's compliance, or lack thereof, with the requirements of Penal Code §§ 632 and 632.7.

The information and documentation discovered as a result of these efforts, have allowed Class Counsel to understand the full breadth of actions taken by ViaSat relative to the Privacy Act and the risks involved in further litigation.  The settlement negotiations concluded successfully and the Parties executed a Memorandum of Understanding with respect to the proposed settlement terms.  Thereafter, the Parties continued to vigorously negotiate and finalize all of the settlement terms and drafted the formal settlement documents, including the exhibits to the settlement which spanned over a period of many months.  On October 11, 2013, the Court preliminarily approved the settlement.

## III.   THE SETTLEMENT

### A.   Settlement Class

Pursuant to Fed. R. Civ. Pro. 23(b)(3), the Court conditionally certified for settlement purposes, a Settlement Class consisting of all residents in California, (1) who are not customers of ViaSat and bound to an arbitration clause with ViaSat, (2) who participated in one or more inbound and/or outbound telephone calls with employees, agents or representatives of ViaSat between July 1, 2012 and October 11, 2013, (3) whose calls were recorded and/or monitored by ViaSat, and (4) who did not receive a disclosure at the outset of the call that the telephone call would be recorded and/or monitored.  Agreement, ¶1.1.

### B.   Settlement Consideration

#### 1.   Cash Benefit to Class Members

ViaSat has agreed to establish a non-reversionary Common Fund of $210,000 (including accrued interest), from which Class Members will automatically receive a one-time cash payment.  Each Class Member (approximately 1,479) will be paid a *pro rata* share of the Common Fund.  Agreement, ¶¶1.4, 2.2.

Significantly, the Parties have streamlined the settlement process for receiving the monetary benefits from the Common Fund.  ViaSat will ***automatically*** distribute the Settlement Amount to all Class Members (1) for whom it is able to identify a U.S. postal mailing address in its records, or through a reverse look-up based on available telephone numbers in its records, without requiring ***any proof of claim form*** (the "Direct Notice" Class Members), or (2) for whom it is able to identify an email address and who provide a mailing address in response to the Email Notice (the "Email Notice" Class Members), or (3) other Class Members who did not receive the Direct Notice or Email Notice, but otherwise demonstrate their eligibility by simply providing basic information, such as their name, address, and the relevant telephone number used.  Agreement, ¶¶ 2.2, 3.3, 3.5.

4

### a.   *Cy Pres* Distribution of Settlement Amount Remainder

In the event that any portion of the Common Fund remains unclaimed, or any check paid to a Class Member remains uncashed for more than 180 days after issuance, then such unclaimed or uncashed funds will revert for *cy pres* distribution to The University of California, Berkeley Center for Law & Technology - Information Privacy Programs ("BCLT"), subject to the approval of the Court, which is an independent, non-profit 501(c)(3) organization.  BCLT is a leading institution for research, education, and policy development in consumer protection, privacy law, and e-commerce and is home to some of the most prominent faculty members and policy makers on these issues in the country.  BCLT intends to use any *cy pres* distribution it may receive to expand and support its information privacy programs by engaging with students, businesses, consumers and regulators.[4] Agreement, ¶2.3.  The Parties carefully selected this non-profit organization in compliance with *Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) and *Dennis v. Kellogg* , 697 F.3d 858 (9th Cir. 2012).

### C.   Non-Monetary Relief

The settlement also provides for an important change in Viasat's business practices.  ViaSat agrees, unless there is a change in California law, to comply with the requirements of Penal Code §§ 632 and 632.7 by providing notice prior to recording or monitoring of customer service calls.  Agreement, ¶2.1.

### D.   Payment of Settlement Administration Expenses

The cost of settlement administration and notice shall be borne exclusively by ViaSat *separate* and *in addition* to the Common Fund.  Agreement, ¶2.7.

---

[4] *See,* Exhibit "A" attached to Declaration of Zev B. Zysman In Support of Motion for Preliminary Approval which is a true and correct copy of the written proposal from The University of California, Berkeley Center for Law & Technology - Information Privacy Programs [Docket No. 27-2].

### E. Payment of Attorneys' Fees and Costs to Class Counsel and Service Payment to Class Representative

As part of the settlement, ViaSat agreed not to oppose Class Counsel's request for attorneys' fees and costs of $150,000, in consideration of the time and effort they have expended for the benefit of the Plaintiff and Class Members, subject to Court approval.  Pursuant to the Preliminary Approval Order, Class Counsel filed an application to the Court for a fee and expense award in advance of the deadline for filing objections.  (Dkt. 32).  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 2010 WL 3239460 (9th Cir. 2010).  All attorneys' fees and costs awarded will be paid by ViaSat *separate* and *in addition* to the Common Fund, and will *not* reduce the benefits available under the settlement.  The issue of attorneys' fees and costs was negotiated at arm's-length only *after* agreement was reached on all substantive terms of the settlement.  Agreement, ¶¶2.4, 2.6.

Moreover, ViaSat agreed to pay a modest service payment to the Class Representative of $5,000, subject to Court approval, in light of his willingness to devote the time and energy to prosecuting this litigation and in representing the Class.  Like attorneys' fees and costs, the service payment will be paid *separate* and *in addition* to the Common Fund, and will *not* reduce the benefits available under the settlement.  Agreement, ¶2.5.

Significantly, **no** Class Member has objected to the requested fees and expenses or service payment which was fully disclosed in the Class Notices.

### IV.   BENEFITS OF THE PROPOSED SETTLEMENT

ViaSat, which is represented by a national law firm with a wealth of experience defending consumer class action litigation, gave every indication that they would battle Class Counsel through class certification, discovery, and, in all likelihood, would file a motion for summary judgment.  Should the matter have continued to trial, ViaSat prepared to put on extensive testimony to demonstrate, *inter alia*, that telephone calls to ViaSat's business could not give rise to an

objectively reasonable expectation that the calls would not be recorded, so that the calls at issue could not have been "confidential communications" as required by California Penal Code § 632; that customers consented to the recording, either expressly or impliedly, and that, even in the event liability were established, the amount of statutory damages under Penal Code § 637.2 was constitutionally excessive in light of the fact that none of the unlawfully recorded phone calls resulted in any actual damages or economic harm.

Although Plaintiff believes the causes of action are meritorious, each of these defense arguments (and others) would have to be overcome in order for the class claims to prevail. Moreover, Class Counsel would have had to incur substantial time and expense to match ViaSat's "expert for expert" before a jury, to demonstrate both liability and damages, with no guarantee of a successful outcome. By resolving the matter now, the Class will get a substantial benefit without the risk of nonpayment or a judgment at trial being reversed on appeal.

## V.    CLASS NOTICE AND SETTLEMENT ADMINISTRATION

The approved notice plan was developed to reach the maximum number of Class Members practicable. Following this Court's issuance of its order granting preliminary approval of the settlement and approving the form of notice on October 11, 2013, multiple forms of notice were provided to the Class.

First, ViaSat provided the Settlement Administrator with a computerized list of 1,831 records, characterized as the Class Member List. *See* Declaration of Phil Cooper of Kurtzman Carson Consultants LLC in Support of Final Approval of Class Action Settlement ("Cooper Decl."), filed herewith, ¶5. The Class Member List contained records, including name, mailing address and/or email address information. Cooper Decl. ¶5. After removing duplicate records and records without mailable postal addresses, 1,652 names and postal addresses remained on the Class Member List. 11 additional records, had email addresses only, for a total of 1,663 records. Cooper Decl. ¶6. The Settlement Administrator caused the postal

addresses in the Class Member List to be updated using the National Change of Address system ("NCOA").  Cooper Decl. ¶8.  In all, the Settlement Administrator mailed 1,652 Direct Notice Packets by U.S. Mail and 11 Email Notices by email to Class Members.  Cooper Decl. ¶¶10-11.  The Settlement Administrator received 3 Direct Notices returned by the U.S. Postal Service with forwarding postal addresses which were remailed to the new addresses.  The Settlement Administrator received 178 Direct Notices without forwarding addresses. Cooper Decl. ¶¶13-14.

Second, the Settlement Administrator established an internet Settlement Website, www.ViaSatSettlement.com, where the Complaint, Full Notice, Settlement Agreement, Motion for Attorneys' Fees, Expenses and Incentive Award, and other documents were made available.  Cooper  Decl. ¶7.

Third, the Settlement Administrator published the Publication Notice in the print and on-line California editions of *USA Today*.  Cooper Decl. ¶12.

In addition, following preliminary approval of the settlement, as authorized by the Agreement, Class Counsel filed a noticed motion requesting an award of attorneys' fees and expenses in the amount of $150,000, and a service payment to Plaintiff of $5,000, all payable separate and in addition to the Common Fund. (Dkt. 32).  The motion was posted on the Settlement Website.  *No* objection or opposition has been filed by any Class Member to the requested awards.

Moreover, the Settlement Administrator timely effected service on the appropriate Federal and State officials of the documents and other information required to be served pursuant to the terms of the Class Action Fairness Act, 28 U.S.C. § 1715.  Cooper Decl. ¶4.

The deadline for objecting to the settlement, or opting out was January 24, 2014.  As of February 11, 2013, the Settlement Administrator has received *zero* objections and *not a single* request for exclusion from the Settlement.  Cooper Decl. ¶¶17-18. Moreover, *no* objections have been filed with the Court, or received by Class Counsel and Defense Counsel.  *See* Declaration of Zev B. Zysman in Support

of Plaintiff's Motion for Final Approval of Class Settlement (the "Zysman Decl."), filed herewith. ¶¶19-20.

In all, there were a total of 1,474 Direct Notices which were successfully mailed to Class Members (excluding the Direct Notices which were returned by the U.S. Postal Service without a forwarding postal address) and 5 Claims for Eligibility received by the Settlement Administrator.  Accordingly, under the terms of the settlement, there are approximately 1,479 Class Members that will *automatically* receive a pro rata distribution from the Common Fund.

## VI.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

Federal Rule of Civil Procedure 23(e) requires that class action settlements be fair, adequate and reasonable.  The factors analyzed in this Circuit to determine the fairness of a class action settlement are set forth in *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and are discussed in detail below.  In sum, Class Counsel firmly believe that the settlement is fair, reasonable and adequate based on nearly one and a half years of extensive factual investigation, legal research, consultations with potential privacy experts and IT specialists, analysis of publicly available documents, review of documents produced by ViaSat, the certainty of a recovery versus the risks of no recovery, past experience in other class actions, the serious disputes between the Parties concerning liability and damages, and the favorable reaction of the Class.  Thus, Class Counsel recommend that the settlement be approved by this Court.[5]

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice*, 688 F.2d at 625.  Class action suits readily lend themselves to compromise because of the

---

[5] In reviewing this settlement under Rule 23, the Court is not required to substitute its business judgment for that of these counsel, *Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979); the settlement should be approved if it is within a "range of reasonableness," *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972).

difficulties of proof, the uncertainties of the outcome and the typical length of litigation. "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[6]

The Ninth Circuit has provided a non-exclusive list of factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted). *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir.), *cert. denied*, 506 U.S. 953 (1992).

---

[6] The law always favors the compromise of disputed claims. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986).

The district court must exercise sound discretion in approving a settlement. *See Torrisi*, 8 F.3d at 1375; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.), *aff'd*, 661 F.2d 939 (9th Cir. 1981).  However, a strong initial presumption of fairness attaches to a proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.  *See Hughes v. Microsoft Corp*., 2001 U.S. Dist. LEXIS 5976, at *21 (W.D. Wash. Mar. 26, 2001).  Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit defines the limits of the inquiry to be made by the Court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id*. (emphasis in the original).  Application of these criteria shows that this settlement warrants the Court's approval.

Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979).  The presumption of reasonableness in this action is fully

11

warranted because the settlement is the product of arm's-length negotiations.

Finally, it is the considered judgment of counsel for the parties that this settlement is a fair, reasonable and adequate resolution of the litigation.  Zysman Decl. ¶¶4, 21-23; *see also Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-*21; *Manual for Complex Litigation*, Section 30.42 (3d ed. 1995).[7]

## VII.   THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARDS FOR APPROVAL

### A.   The Parties Could Identify the Strengths and Weaknesses of Their Cases

The stage of the proceedings, including the amount of discovery completed, is one of the factors which courts consider in determining the fairness, reasonableness and adequacy of a settlement.  *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also Weinberger*, 698 F.2d at 74; *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-617.

Here, Class Counsel conducted an extensive informal investigation regarding the facts and legal issues relating to Plaintiff's claims and damages; participated in discovery, and otherwise obtained information through their investigation; prepared a highly detailed complaint; researched the law regarding the claims and defenses asserted; researched and drafted a motion for class certification (withheld filing following tentative agreement to settle); and thoroughly explored each side's claims and defenses.  As a result, Class Counsel had a comprehensive understanding of the strengths and weaknesses of the case and had sufficient information to make an informed decision regarding the fairness of the settlement before presenting it to the Court.

Class Counsel believe that the claims asserted against ViaSat arising out of its telephone recording and monitoring practices are meritorious, and Class Counsel were prepared to fully litigate the case, including through trial.  ViaSat, on the other

---

[7] *Accord Malchman v. Davis*, 761 F.2d 893, 903 (2d Cir. 1985), *cert. denied*, 475 U.S. 1143 (1986); *In re PaineWebber Ltd. P'ships Litig*., 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

hand, did, and would have continued to, raise substantial legal and factual defenses to the claims including, but not limited to the following: that telephone calls to ViaSat's business could not give rise to an objectively reasonable expectation that the calls would not be recorded, so that the calls at issue could not have been "confidential communications" as required by California Penal Code § 632; that customers consented to the recording, either expressly or impliedly, and that, even in the event liability were established, the amount of statutory damages under Penal Code § 637.2 was constitutionally excessive in light of the fact that none of the unlawfully recorded phone calls resulted in any actual damages or economic harm.

Moreover, Plaintiff faced risks that class certification would not have been granted.  Plaintiff believes that he would have prevailed on class certification and the fact that class certification has been granted in other cases based on a failure to disclose that telephone calls were being recorded supports Plaintiff's position about the propriety of class certification.  *See, e.g., Thomasson v. GC Services, Ltd Partnership*, 2011 WL 1339063 (S.D. Cal. 2011).  Nevertheless, Courts have discretion when it comes to determining whether or not to certify a class and Defendant would have vigorously contested a motion for class certification. Zysman Decl. ¶23.

## B.   The Settlement Appropriately Balances the Risks of Litigation and the Benefit to the Settlement Class of a Certain Recovery

To determine whether the proposed settlement is fair, reasonable and adequate, the court must balance the continuing risks of litigation against the benefits afforded to class members and the immediacy and certainty of a substantial recovery.  *See Mego Fin*., 213 F.3d at 458; *Girsh*, 521 F.2d at 157; *Boyd*, 485 F. Supp. at 616-617; *In re Warner Commc'ns Sec. Litig*., 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In other words, "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate

recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

This factor supports final approval, since the settlement affords Class Members prompt and complete relief, while avoiding significant legal and factual hurdles that otherwise may have prevented them from obtaining any recovery from ViaSat at all.  ViaSat has forgone an array of legal defenses in agreeing to the settlement.

While Class Counsel believe the claims are meritorious, they are also experienced and realistic, and understand that the duration and outcome of this litigation, including prevailing on the motion for class certification, defeating ViaSat's motion(s) for summary judgment, winning at trial, and then defending the judgment against an appeal that would inevitably follow a successful trial, are inherently uncertain.  These risks must be considered in assessing the fairness of the settlement, which is guaranteed, against a result that would leave the Class without any benefits.  Because the settlement provides immediate and substantial monetary and injunctive relief, without the attendant risks of continued litigation, it warrants this Court's approval.

## C.  The Risk Of Maintaining Class Action Status Through Trial

Although Class Counsel believe that certification of the class is warranted, certification was by no means certain.  ViaSat would have vigorously contested every element of Plaintiff's case, including Plaintiff's ability to show that class certification is warranted, whether liability can be established, and whether Plaintiff could prove damages on a class-wide basis.  There was the very real risk that this litigation could result in no recovery at all.

**D.   The Relief Provided In The Settlement**

The settlement provides valuable monetary benefits to Class Members specifically and consumers generally in the form of injunctive relief.  In assessing the consideration obtained by class members, "it is the complete package as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527.  "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

ViaSat's payment of $210,000 to the Class will provide a very fair and reasonable recovery under the circumstances.  Plaintiff's counsel are familiar with several other class action settlements approved by California state and federal courts which allege similar privacy-related violations under Penal Code sections 632 and/or 632.7 on behalf of California consumers.  Compared to the net settlements in these other Privacy Act cases, Class Members in the instant case (approximately 1,479) are entitled to receive a recovery that is comparable, if not superior, on a per class member basis.[8]  Following is a summary of class action settlements in five other Privacy Act cases for which information is available.[9]

    a)    *Batmanghelich v. Sirius XM Radio, Inc.*, United States District Court, Central District of California, Case No. 09-9190-VBF – 3,500,000 potential class members settled for $7,000,000 (approximately $2.00 per class member);

---

[8]   As explained above, a total of 1,474 Direct Notices were mailed to Class Members (excluding the Direct Notices which were returned by the U.S. Postal Service without a forwarding postal address) and 5 Claims for Eligibility were received by the Settlement Administrator. Accordingly, the Settlement Administrator will *automatically* distribute the Settlement Amount to approximately 1,479 Class Members. Based on the number of eligible Class Members, if the settlement receives final approval, the settlement payments to Class Members will be approximately $142.00 per Class Member.

[9]   All numbers are approximate and are based on documents publicly available.

15

b)  *Greenberg v. E-Trade Financial Corporation*, Los Angeles Superior Court, Case No. BC360152 – 1,400,000 class members settled for $5,625,000 ($4.02 per class member);

c)  *Marenco v. Visa*, United States District Court, Central District of California, Case No. 10-08022-DMG – 648,000 potential class members settled for $13,000,000 ($20.00 per class member);

d)  *Cohorst v. BRE Properties*, United States District Court, Southern District of California, Case No. 10-02666-JM – 1,170,000 million potential class members settled for $3,500,000 ($2.99 per class member); and

e)  *Skuro v. BMW, ATX*, United States District Court, Central District of California, Case No. 10-8672-GW – 43,000 potential class members settled for $300,000 ($6.98 per class member or, alternatively, a six month extension of the BMW Assist basic safety plan valued by the parties at $100).

Moreover, the settlement shifts the burden of paying all settlement administrative and notice expenses, attorneys' fees and expenses, and service payment onto ViaSat, thus avoiding any reduction from Class Members' recoveries. This is more favorable for Class Members than the typical case, where the class recovery is reduced by paying administrative costs and the fees and expenses of Class Counsel.

By any criteria, the results achieved via the settlement are extremely fair and reasonable, and favor approval of the settlement.

**E.   The Extent Of Discovery Completed And The Stage Of Proceedings**

The settlement was reached only after Class Counsel had engaged in sufficient investigation and discovery.  Class Counsel's investigation and discovery included: (a) extensive investigation and drafting of the class action Complaint, which included researching of the applicable law with respect to the claims asserted therein

and the potential defenses thereto; (b) drafting class certification and merits discovery, including special interrogatories, requests for production of documents, and requests for admissions; (c) reviewing and analyzing documents produced by ViaSat, and otherwise obtained through their investigation; (d) reviewing information and confirmatory documentation produced by ViaSat concerning, *inter alia*, the number of inbound and outbound calls that were recorded with persons in California during the Class Period, the reasons and uses for recording telephone calls, the extent (if any) to which ViaSat notified persons in California that their telephone calls would be recorded, the information technology systems used by ViaSat to enable call recording and monitoring, and ViaSat's policies, procedures, and practices regarding the recording, monitoring and retention of inbound and outbound telephone calls with persons in California; (e) consulting with potential privacy rights experts and IT specialists; (f) drafting class certification motion (withheld filing following agreement to settle); and (g) engaging in numerous settlement discussions with defense counsel over a period of many months, including drafting settlement proposals and counter-proposals.  Zysman Decl. ¶5.

By the time the Parties executed the Stipulation, they had more than adequate information to assess the strengths and weaknesses of their respective cases, and Class Counsel in particular had sufficient grasp of the legal and factual issues in the litigation to make a thorough appraisal of the adequacy of the settlement to provide meaningful relief to the Class.  Zysman Decl. ¶6.

### F.   The Recommendations of Experienced Counsel Heavily Favor Approval of the Settlement

Experienced counsel, negotiating at arm's length, have weighed the factors discussed above and endorse the settlement.  As courts have stated, the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel

1    involved in the case approved the settlement after hard-fought negotiations is

2    entitled to considerable weight").  In approving a settlement, courts often focus on

3    the "negotiating process by which the settlement was reached." *Weinberger*, 698

4    F.2d at 74, cited in *Warner Commc'ns*, 618 F. Supp. at 741.

5         This action has been litigated and settled by experienced and competent

6    counsel on both sides of the case.  The law firms representing the Class are well

7    known for their experience and success in complex and class action litigation. That

8    qualified and well-informed counsel endorse the settlement as being fair, reasonable

9    and adequate to the Class heavily favors this Court's approval of the settlement.

10        **G.**    **The Presence of a Governmental Participant**

11         In weighing the fairness of a proposed class action settlement, some courts

12    consider whether any governmental entity has participated in the prosecution of this

13    action or the negotiation of this settlement.  Here, there has been no involvement by

14    any governmental entity.  Pursuant to the Class Action Fairness Act of 2005, 28

15    U.S.C. §1715, notice of the settlement was provided to the appropriate governmental

16    entities and agencies and no entity has objected to the settlement. Cooper Decl. ¶ 4.

17    The absence of any objection favors approval.

18
19        **H.**    **Reaction of the Settlement Class Supports Approval of the Settlement**

20         Among the most compelling factors to consider is the reaction of the Class to

21    the settlement.  A court may appropriately infer that a class action settlement is fair

22    and reasonable when few Class Members object to it.  *Marshall v. Holiday Magic,*

23    *Inc.*, 550 F.3d 1173, 1178 (9th Cir. 1977).  Indeed, a court may even approve a class

24    action settlement over the objections of a significant percentage of class members.

25    *See Class Plaintiffs v. City of Seattle*, 955 F2d 1268 (9th Cir. 1992) (upholding trial

26    court's grant of final approval over class member objections); *see also Kirkorian v.*

27    *Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1998) ("a settlement can be fair,

28    notwithstanding opposition from a large segment of the class").  Here, the reaction

of the Class has been overwhelmingly positive.  *No* objections were filed, and ***not a single*** Class Member has opted-out.

In light of the widespread dissemination of the Class Notice via direct mailings, the internet and publication in the *USA Today*, the absence of any objections and opt-outs clearly suggests that, under the circumstances the class perceives the proposed settlement as fair, reasonable, and adequate, and therefore should be approved.  *See, e.g., In re Fleet/Norstar Sec. Litig.*, 935 F Supp. 99, 107 (D.R.I. 1996) (settlement approved where fewer than ten out of 40,000 potential class members objected).

## VIII.  THE CLASS SHOULD BE FINALLY CERTIFIED

Based on all of the factors above, the Agreement is fair, reasonable, and adequate and should be finally approved by the Court.  In order to grant final certification of a settlement class, the requirements of Rule 23 must be generally satisfied.  *See* Fed. R. Civ. Pro. 23; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  After considering the Parties' fully briefed preliminary approval motion, the Court already found that the Rule 23 elements were satisfied and conditionally certified the Class for purposes of settlement. (Docket 31).  No Class Member has objected on the basis that certification of the claims was improper.  Accordingly, the Class is properly certified as a class action for purposes of final approval of the settlement.

///

///

///

///

///

///

///

## IX.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court confirm certification of the Class and grant final approval of the settlement.

Dated: February 18, 2014

**LAW OFFICES OF ZEV B. ZYSMAN**
A Professional Corporation

/s/ Zev B. Zysman
Zev B. Zysman

15760 Ventura Boulevard,
16th Floor
Encino, CA 90024
Telephone: (818) 783-8836
Facsimile:   (818) 783-9985

*Attorneys for Plaintiff and
the Settlement Class*